# IN THE COURT OF APPEALS OF IOWA

No. 24-1381
Filed October 30, 2024

**IN THE INTEREST OF J.F.,**
**Minor Child,**

**M.F., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Story County, Hunter W. Thorpe, Judge.

A mother appeals the district court's order terminating her parental rights to her child pursuant to Iowa Code section 232.116(1)(e), (h), and (*l*) (2024). **AFFIRMED.**

Daniela Matasovic of Matasovic Law Firm, Ames, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Shannon Leighty of the Public Defender's Office, Nevada, attorney and guardian ad litem for minor child.

Considered by Tabor, C.J., and Chicchelly and Sandy, JJ.

**SANDY, Judge.**

A mother appeals the district court's order terminating her parental rights to her child pursuant to Iowa Code section 232.116(1)(e), (h), and (*l*) (2024). She argues there is insufficient evidence to support the grounds for termination, the termination is not in the child's best interest, other permanency options are available under section 232.104(2), and an exception to termination applies based on the parent-child bond. We affirm.

## I. Background Facts and Proceedings

In September 2023, the Iowa Department of Health and Human Services (HHS) became aware that the mother had tested positive for methamphetamine in a drug swab conducted during her probation. The mother denied using methamphetamine and suggested the positive result occurred because she "took a hit" off a vape which she believed contained THC. Yet she again tested positive for methamphetamine/amphetamine and THC following a urine test conducted later that month. She continued to deny methamphetamine use and consequently refused to engage in substance-use treatment.

The district court granted removal on September 27, 2023, after finding "the mother has tested positive for meth twice in recent weeks." The mother later consented to the removal. The State filed a child-in-need-of-assistance (CINA) petition, and the child was adjudicated as a CINA pursuant to Iowa Code section 232.96A(14) (2023) in October.

The dispositional hearing was held that December, and the mother again denied substance-use issues. The child remained adjudicated a CINA and in the custody of HHS for foster care. The mother failed to appear for a drug screening

in January 2024, but had a sweat patch applied later in the month. When the sweat patch was removed, the results came back positive for methamphetamine, amphetamine, and THC. This was the mother's third positive test for methamphetamine and THC. And for a third time she denied having used methamphetamine, claiming that she "doesn't trust the sweat tests" and the positive result was likely because of the "Monster energy drinks she drinks daily."

A mental health assessment completed in December 2023 resulted in diagnoses of generalized anxiety disorder, recurrent and severe major depressive disorder, and chronic PTSD. The mother was encouraged to attend therapy but felt she did not need therapy and would not benefit from it.

The mother failed to appear for another drug test in March 2024, claiming she "hit her head." In April she again tested positive for methamphetamine, amphetamine, and THC. She continued to deny methamphetamine use. The mother completed a substance-use evaluation following this positive test, and it was suggested she attend extended outpatient treatment for substance use. A treatment appointment was scheduled for May, but she did not attend. She appeared for a session later in the month but failed to appear for the third session. She also failed to appear for her June session. The counselor recommended raising her treatment to residential-level treatment.

In June, the mother reported that she had lost her job at Taco John's because of multiple tardies. The social work case manager observed red patches all over the mother's skin, which the mother explained was due to high stress and anxiety. The mother has been encouraged to regularly take the medication she has been prescribed to help combat these mental health struggles.

A permanency hearing was held on June 21, 2024. The court found that "[t]he Mother has made very little progress" and "has not been able to complete any type of substance abuse treatment and has outright denied using methamphetamine despite testing positive for it on three occasions." Accordingly, the district court found that a six-month extension would not be proper because it would not likely resolve the underlying issues that led to adjudication and made ongoing removal necessary.

The State then petitioned for termination of the mother's parental rights on June 28. The hearing on the termination petition was held on August 8, and on August 20, the district court entered an order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(e), (h), and (*l*) (2024). The mother now appeals.

## II. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

## III. Discussion

We use a three-step analysis to review the termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). The court must determine: (1) whether grounds for termination have been established, (2) whether termination is in the child's best interests, and (3) whether the court should exercise any of the permissive exceptions to termination. *Id.* at 472-73. "However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020). The court will

also consider any other claims brought by the parent.  *See In re T.P.*, No. 19-0162, 2019 WL 3317346, at *2 (Iowa Ct. App. July 24, 2019).

### A. Grounds for Termination

The mother's parental rights were terminated pursuant to Iowa Code section 232.116(1)(e), (h), and (*l*).  We need only to find sufficient evidence on one of those grounds to affirm.  *D.W.*, 791 N.W.2d at 707.

To terminate parental rights under paragraph (h), the district court must find that (1) the child is three years of age or younger; (2) the child has been adjudicated a CINA, (3) the child has been removed from the physical custody of the child's parents for the required period of time, and (4) there is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.  Iowa Code § 232.116(1)(h).  "[A]t the present time" means "the time of the termination hearing."  *D.W.*, 791 N.W.2d at 707.

There is no dispute here that the first three requirements are met.  The child is under three years of age, was adjudicated a CINA in October 2023, and has been out of the mother's custody for at least six of the last twelve months.  We need only find that the child cannot be returned to the mother at the present time. At the termination hearing, the mother admitted the child could not be returned to her at the present time:

> Q. So in your opinion, what do you need to do before [the child] could be safely returned to your care?  A. I need to go to treatment and get back from treatment and make sure that the house looks fine . . . .
> Q. Okay.  And so since you think that those things need to be accomplished before he can be returned, fair to say that it would not be appropriate to return [the child] today?  A. Not quite yet.

Based on the reports about the mother's substance use, her failure to address substance-use or mental-health issues, and her failure to even admit to her substance use, we agree with the mother's assessment that the child cannot be returned to her at this time. Consequently, the statutory grounds for termination under section 232.116(1)(h) have been met.

### B. Best Interest of the Child

The mother contends that termination is not in the child's best interest and that the child could be returned to her care in six months. "Even after we have determined that statutory grounds for termination exist, we must still determine whether termination is in the children's best interests." *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012). When deciding whether termination is in the child's best interest, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

"It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997). We "cannot deprive a child of permanency after the State has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.M.,* 843 N.W.2d 100, 112 (Iowa 2014). In order to continue placement for another six months, Iowa Code section 232.104(2)(b) requires the district court to determine the need for removal will no longer exist at the end of the extension. *See In re A.A.G.,* 708 N.W.2d 85, 92 (Iowa Ct. App. 2005).

Accordingly, looking to the parent's past performance "may indicate the quality of care the parent is capable of providing in the future." *C.K.*, 558 N.W.2d at 172.

The mother has demonstrated consistent use of methamphetamine over the past year. The child was twelve months old at the time of removal and had been out of the mother's care for ten and a half months at the time of termination—nearly half his life. When looking at her past performance, the mother's substance use appears to be the most consistent aspect of her lifestyle available in the record.

But the core issue making termination in the child's best interest is the mother's refusal to acknowledge her substance use. We believe methamphetamine to be a particularly dangerous "scourge" that is "'imminently likely' to result in harmful effects to the physical, mental, or social wellbeing of the [the child] in the [mother]'s care." *In re J.S.*, 846 N.W.2d 36, 37, 42 (Iowa 2014). And the mother's contention that she decided on the day of the termination hearing to seek help—"her ride to treatment was sitting in the court room; [] her bags were packed, sitting in front of her door"—is more convenient than it is convincing. "A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000).

A finding that termination is not in the child's best interest would hinge on our conclusion that the mother will both address and overcome her substance use. But she cannot do either of those things before she admits she has a problem. And she has not done so. "[T]he interests in permanency for [the child] must prevail over [the mother]'s uncertain battle with drugs." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998). Termination is in the child's best interest, and there is

no evidence in the record to suggest that an additional six months will change that reality.

### C. Exceptions to Termination

The mother asserts that the bond between her and the child precludes termination. "[O]nce the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception to termination under Iowa Code section 232.116(3)[]." *A.S.*, 906 N.W.2d at 476. The exceptions under Iowa Code section 232.116(3) are permissive and not mandatory.

"The court need not terminate the relationship between the parent and child if the court finds . . . clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). "[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs." *D.W.*, 791 N.W.2d at 709.

The court appointed special advocates report confirms that the mother and child love each other. But the child also shares a strong connection with his foster mother, calls her "mom," defers to her for his needs and comfort, and recognizes the foster home as his home. The mother's love for the child does not outweigh the danger she presents. And the child's connection to the foster mother will ensure that termination does not cause more harm than what can be expected in any termination case.

We affirm the termination of the mother's parental rights to the child.

**AFFIRMED.**